UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **CABRERA SERVICES, INC.** | ) |
| | ) |
| Plaintiff | ) NO. 1:21-CV-00031-LG-JCG |
| | ) |
| v. | ) |
| | ) |
| **APTIM FEDERAL SERVICES, LLC** | ) |
| | ) |
| **Defendant** | |

**APTIM FEDERAL SERVICES, LLC'S
AFFIRMATIVE DEFENSES AND ANSWER TO COMPLAINT;
COUNTERCLAIM AGAINST CABRERA SERVICES, INC.; AND,
<u>THIRD-PARTY COMPLAINT AGAINST BECC, INC.</u>**

**NOW INTO COURT**, through undersigned counsel, comes Aptim Federal Services, LLC ("Defendant" or "APTIM") and files its Affirmative Defenses and Answer to the Complaint filed by plaintiff Cabrera Services, Inc. ("Cabrera"), its Counterclaim Against Cabrera, and its Third-Party Complaint Against BECC, Inc. ("BECC").

## <u>AFFIRMATIVE DEFENSES</u>

### <u>*First Defense*</u>

The Complaint fails to state a cause of action against Defendant.

### <u>*Second Defense*</u>

Cabrera or third parties for whom Defendant has no legal responsibility caused the damages Cabrera alleges in its Complaint.

### <u>*Third Defense*</u>

Cabrera's claims are barred due to its own contractual breaches and/or other fault.

### <u>*Fourth Defense*</u>

Cabrera's claims are barred because of Cabrera's material breach of the subcontract between it and APTIM.

### *Fifth Defense*

If and only to the extent that Cabrera would otherwise be entitled to any form of damages, Defendant is entitled to an offset in the amount of the damages that Cabrera has caused Defendant.

### *Sixth Defense*

Cabrera's claims are barred, in whole or in part, to the extent its own contributing and/or comparative fault caused its alleged damages.

### *Seventh Defense*

Cabrera failed to mitigate and/or aggravated its alleged losses, injuries, and/or damages.

### *Eighth Defense*

Cabrera's claims are barred by the doctrines of consent, waiver, release, payment, estoppel, and/or accord and satisfaction.

### *Ninth Defense*

Cabrera's claims are barred because it failed to comply with the notice provisions of the subcontract between it and APTIM.

### *Tenth Defense*

Cabrera's claims are barred because it assumed full responsibility for its work and the work of its subcontractors, agreed to correct non-compliant or defective work at its sole cost and expense, and agreed to indemnify APTIM from any claims arising from a breach by Cabrera or its subcontractors of any term or condition of the subcontract.

### *Eleventh Defense*

APTIM fully performed its obligations under its contract with Cabrera and acted in good faith at all times.

### *Twelfth Defense*

Defendant affirmatively pleads, as if copied in full herein, the provisions of the subcontract between Cabrera and APTIM, which operate to bar Cabrera's claims in whole or part.

### *Thirteenth Defense*

Defendant reserves the right to plead additional defenses upon obtaining information sufficient to justify a belief therein.

### **ANSWER**

**AND NOW**, further responding specifically to the numbered paragraphs contained in Cabrera's Complaint, Defendant denies each allegation except as may be hereinafter expressly admitted, and avers as follows:

1. As written, Paragraph 1 of the Complaint is not a statement of fact directed to Defendant and does not require a response. To the extent a response is required, out of an abundance of caution, Defendant denies the allegations of Paragraph 1 for lack of sufficient information to justify a belief therein.

2. Defendant admits the allegations of Paragraph 2 of the Complaint.

3. Defendant admits it is a limited liability company formed under the laws of Louisiana; however, its citizenship is determined by the citizenship of its members. Defendant's sole member is a Louisiana limited liability company whose sole member, Aptim Corp., is a Delaware corporation with its principal place of business in Louisiana. The remaining allegations of Paragraph 3 of the Complaint are legal conclusions and do not require a response; however, Defendant admits that this Court has diversity jurisdiction over this action.

4. Defendant admits that venue in the Southern District of Mississippi is proper pursuant to 28 U.S.C. § 1391(b)(2) because the construction project at issue in this litigation is located in Gulfport, Mississippi, which is within this district.

5. Defendant admits that the allegations of Paragraph 5 of the Complaint provide a general, albeit incomplete, description of the Project. Defendant also admits it entered into a contract with the United States Navy in connection with the Project. That contract is a written document, and Defendant asserts that the document speaks for itself and is the best evidence of its contents and meaning. Defendant denies the allegations of Paragraph 5 to the extent they fail to fully and accurately reflect the contract.

6. Defendant admits only that Cabrera was APTIM's subcontractor on the Project pursuant to a written subcontract with an effective date of June 12, 2017. Defendant asserts that the document speaks for itself and is the best evidence of its contents and meaning. Defendant denies the allegations of Paragraph 6 of the Complaint to the extent they fail to fully and accurately reflect the subcontract.

7. Defendant denies the allegations of Paragraph 7 of the Complaint.

8. Defendant admits that Cabrera issued an invoice in the amount stated but denies the invoice was issued in July 2020. Defendant also denies that the invoice was proper or that the amount stated was owed. Defendant denies the remaining allegations of Paragraph 8 of the Complaint.

9. Defendant admits that it paid Cabrera the stated amount but denies the remaining allegations of Paragraph 9 of the Complaint.

10. Defendant denies the allegations of Paragraph 10 of the Complaint.

11. Defendant denies the allegations of Paragraph 11 of the Complaint.

12. Defendant denies the allegations of Paragraph 12 of the Complaint.

The last paragraph of the Complaint constitutes Cabrera's prayer for relief and requires no response from Defendant; however, to the extent a response is required, Defendant denies the allegations of Cabrera's prayer for relief.

## COUNTERCLAIM AGAINST CABRERA SERVICES, INC.

Defendant/Counter-Plaintiff, APTIM, asserts this Counterclaim against Plaintiff/Counter-Defendant, Cabrera, pursuant to Federal Rule of Civil Procedure 13(a), and states as follows:

1. APTIM is limited liability company formed under the laws of Louisiana. Its sole member is a Louisiana limited liability company whose sole member is a Delaware corporation with its principal place of business in Louisiana.

2. Cabrera is a Connecticut corporation with its principal place of business in Connecticut. *See* Compl. at 1 (¶ 1), ECF No. 1.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to APTIM's claims occurred in this district. Specifically, the construction project at issue is located in Gulfport, Mississippi, which is within the jurisdiction of this Court.

## FACTS

5. In February 2016, APTIM[1] contracted with the United States Navy to perform certain environmental remediation services over approximately 19 acres of contaminated soil at the United States Naval Construction Battalion Center in Gulfport, Mississippi ("Project").

6. APTIM then entered into a subcontract with Cabrera effective June 12, 2017 ("Subcontract") that, in general terms, required Cabrera to install a roller-compacted concrete cap

---

[1] At the time of contracting, APTIM was known as CB&I Federal Services, LLC.

("RCC Cap") over certain contaminated soil at the Project. A copy of the Subcontract is attached as Exhibit A.[2] The Subcontract is governed by Texas law. Exhibit A at 3 (¶ 9).

7. Cabrera subsequently subcontracted its scope of work on the Project to Rollcon, LLC ("Rollcon"), a Texas limited liability company. *See* Third-Party Compl, at 2 (¶ 7), ECF No. 10, and Compl. at 1 (¶ 1), ECF No. 1, *Rollcon v. Cabrera*, No. 3:20-CV-01472-JBA, (D. Conn. 9/29/20).

8. Among other things, the Subcontract specified that the installed RCC Cap was to be nine inches thick with a compressive strength of 6,000 psi at 28 days. *See* Exhibit A at 43 (¶ 1.1).

9. The Project was to be completed in two phases. During the first phase, Cabrera was to first install the RCC Cap over a one-acre test pad. Once the test pad was properly installed, during the second phase, Cabrera was to install the RCC Cap on the remaining 18 acres.

10. Cabrera installed the RCC Cap on the one-acre test pad but failed to test it adequately. Thereafter, as part of the second phase, Cabrera installed the RCC Cap on the remaining 18 acres.

11. Test results for the RCC Cap revealed significant failures in the strength of the concrete.

12. The United States Navy rejected the concrete and required remedial work be performed to ensure the RCC Cap conformed to the specifications.

13. Pursuant to the Subcontract, Cabrera agreed:

    a. To perform its work "in accordance with the specifications, requirements and conditions of the Subcontract." Exhibit A at 30 (¶ 39.1.3).

    b. To carry out "all tests required by the Subcontract." Exhibit A at 24 (¶ 21.1).

---

[2] For ease of reference, sequential page numbers have been added to the Subcontract and will be used when referencing the exhibit throughout this Counterclaim.

    c. To "provide CQC testing of the quality that can be submitted to the owner of the RCC cap . . . in compliance with the testing plan indicated in Table 2" which included the compressive strength of the installed RCC Cap. Exhibit A at 45 (¶ 5.3).

    d. That it was "responsible for the complete quality assurance program . . . including all quality requirements to be imposed on its **Lower Tier Subcontractors** . . . . Exhibit A at 90 (¶ 5.1) (emphasis in original).

    e. That APTIM had "the right, but not the obligation . . . to inspect, test and examine the Subcontract Work or any part thereof, before, during and after manufacture or installation." Exhibit A at 25 (¶ 21.1.2).

    f. That, if APTIM did not "inspect or test the Subcontract Work," this would not "relieve [Cabrera] from any liability or obligation under the Subcontract." Exhibit A at 25 (¶ 21.4).

14. Pursuant to the Subcontract, Cabrera warranted its work would "be free from defects and deficiencies in design, materials, construction, title and workmanship"; that the work would "be performed in accordance with the Schedule"; and that the work would "achieve the performance criteria (if any) as set out in the Subcontract." Exhibit A at 30 (¶ 39.1).

15. Pursuant to the Subcontract, Cabrera was fully responsible for the work its subcontractor, Rollcon, performed on the Project. Exhibit A at 16 (¶ 8.4), and 24 (¶ 19.5).

16. Cabrera agreed to pay APTIM's "costs and any related expenses" resulting from work that was defective or otherwise not in accord with the Subcontract. Exhibit A at 25 (¶ 21.1). Cabrera also agreed it was "liable for any and all costs and damages arising as a result of **Subcontractor's** failure to achieve the **Schedule**." Exhibit A at 20 (¶ 14.2) (emphasis in original).

17. Cabrera further agreed that should it "become liable for the payment of any sum of money to [APTIM] whether by way of damages . . . or any costs or expenses incurred by [APTIM] in connection with the performance of the Subcontract Work due to neglect, default or omission of [Cabrera], [APTIM] may back charge, deduct from or set-off such sum." Exhibit A at 27 (¶ 31.1).

7

18. Cabrera's defective work caused the completion of the Project to be delayed and required that remedial work be performed.

19. APTIM incurred expenses it would not have incurred but for Cabrera's defective work. Specifically, APTIM incurred additional expenses for, among other things, personnel, including project managers, engineers, and foremen, required for APTIM to fulfill its contractual obligations to the United States Navy; employee travel and lodging expenses; vehicle expenses; site supplies; and associated general and administrative expenses and other overhead.

20. APTIM has substantially performed under the Subcontract. Pursuant to the Subcontract, APTIM was entitled to back charge or offset any sums it owed to Cabrera as a result of costs APTIM incurred because of Cabrera's defective work. *See* Exhibit A at 27 (¶ 31.1).

## BREACH OF CONTRACT

21. APTIM reasserts and reincorporates by reference each and every allegation contained in the paragraphs 1 through 20 as if set forth fully herein or fully alleged herein.

22. Cabrera breached the Subcontract by:

   a. Failing to properly install the RCC Cap in accordance with the Subcontract's specifications;

   b. Failing to perform the testing required by the Subcontract;

   c. Failing to properly supervise its subcontractor, Rollcon, to ensure the RCC Cap was properly installed and tested in accordance with the Subcontract; and

   d. Delaying completion of the Project.

23. Cabrera's breaches of the Subcontract caused APTIM to incur additional costs associated with delays to the Project and the remedial work the United States Navy required be performed on the Project.

## THIRD-PARTY COMPLAINT AGAINST BECC, INC.

As Defendant/Third-Party Plaintiff, and pursuant to Federal Rule of Civil Procedure 14(a)(1), APTIM hereby files its Third-Party Complaint against Third-Party Defendant, BECC, and alleges as follows:

### PARTIES

24. BECC is an Alabama corporation with its principal place of business in Alabama. Upon information and belief, BECC is registered to do business in Mississippi, maintains an office and registered agent in Mississippi, and contracted with APTIM to perform the services at issue in this litigation at the Project located in Gulfport, Mississippi.

### JURISDICTION AND VENUE

25. Cabrera filed suit asserting that jurisdiction is proper pursuant to 28 U.S.C. § 1332. This Court has supplemental jurisdiction over APTIM's Third-Party Complaint pursuant to 28 U.S.C. § 1367 because the claims in this action are closely related to the claims asserted by Cabrera in its Complaint. The Court also has independent jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to APTIM's claims occurred in this district. Specifically, the construction project at issue is located in Gulfport, Mississippi, which is within the jurisdiction of this Court.

### FACTS

27. In February 2016, APTIM contracted with the United States Navy to perform certain environmental remediation services over approximately 19 acres of contaminated soil at the United States Naval Construction Battalion Center in Gulfport, Mississippi ("Project").

28. Pursuant to that contract, APTIM entered into a subcontract with Cabrera effective June 12, 2017 that, in general terms, required Cabrera to install a roller-compacted concrete cap ("RCC Cap") over certain contaminated soil at the Project. Cabrera subsequently subcontracted this work to Rollcon.

29. APTIM entered into two subcontracts with BECC, dated April 24, 2017 and June 15, 2018, to perform certain testing services on the Project on behalf of APTIM (collectively "BECC Subcontract"). Copies are attached as Exhibits B and C, respectively.[3]

30. The Project was to be completed in two phases. During the first phase, Cabrera was to first install the RCC Cap over a one-acre test pad. Once the test pad was properly installed, during the second phase, Cabrera was to install the RCC Cap on the remaining 18 acres.

31. Cabrera completed phase one and installed the RCC Cap on the one-acre test pad. Thereafter, as part of the second phase, Cabrera installed the RCC Cap on the remaining 18 acres.

32. Testing results for the RCC Cap revealed significant failures in the strength of the concrete.

33. The United States Navy rejected the RCC Cap and required remedial work to ensure the RCC Cap conformed to the specifications.

34. On September 16, 2020, Cabrera filed a complaint against APTIM alleging breach of contract and seeking to recover monies it claims it is owed under its subcontract with APTIM.

35. APTIM has filed an Answer to Cabrera's Complaint denying the material allegations therein, and asserting a Counterclaim against Cabrera seeking damages APTIM sustained as a result of Cabrera's defective performance under its subcontract with APTIM.

36. Although denied by APTIM, Cabrera has alleged that the defective work and

---

[3] For ease of reference, sequential page numbers have been added to the subcontracts and will be used when referencing the exhibits.

required remediation resulted from BECC's negligent testing of the RCC Cap. *See* Third-Party Compl, at 5 (¶ 27), ECF No. 10, *Rollcon v. Cabrera*, No. 3:20-CV-01472-JBA, (D. Conn. 10/16/20).

37. Pursuant to the BECC Subcontract, BECC agreed its work would be "free from defects and deficiencies" and "performed in accordance with the specifications." Exhibits B and C at 10 (¶ 12.2).

38. BECC further agreed to

> defend, indemnify, and hold harmless [APTIM] . . . to the full extent permitted by applicable law, from and against any and all claims, damages, demands, suits, actions, judgments, liabilities, defaults, or costs and expenses, including court costs and attorney's fees, arising directly or indirectly out of or related to [BECC'S] performance hereunder.

Exhibits B and C at 4 (¶ 12).

39. BECC also agreed that it would

> defend, indemnify and hold [APTIM] . . . free and harmless from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs and expenses . . . arising from or relating to . . . [BECC's] actual or asserted failure to comply . . . with the terms of this subcontract.

Exhibits B and C at 11 (¶¶ 15.1, 15.3).

40. Although APTIM's liability to Cabrera is specifically denied, in the event liability is assessed against APTIM, then APTIM asserts that all or part of the liability imposed on it is due to BECC's sole and exclusive breach of the BECC Subcontract and its breach of its duty to exercise ordinary professional skill and diligence in performing its testing services on the Project.

41. Should APTIM be found liable to Cabrera, BECC is obligated to indemnify APTIM for such damages.

## COUNT I - CONTRACTUAL INDEMNITY

42.     APTIM realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 20 and 24 through 41 as if fully set forth herein or fully alleged herein.

43.     APTIM and BECC entered into a valid subcontract whereby BECC agreed to indemnify APTIM for damages arising from BECC's actual or asserted failure to comply with the terms of the BECC Subcontract.

44.     APTIM denies it breached its subcontract with Cabrera or that it owes any sums to Cabrera; however, should APTIM be found liable to Cabrera, BECC is contractually obligated to indemnify APTIM for those damages as a result of BECC's breach of its obligations under the BECC Subcontract.

## COUNT II - PROFESSIONAL NEGLIGENCE

45.     APTIM realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 20 and 24 through 41 as if fully set forth herein or fully alleged herein.

46.     Cabrera has alleged the defective work and required remediation resulted from BECC's negligent testing of the RCC Cap.

47.     BECC owed a duty to exercise ordinary professional skill and diligence in performing its testing services on the Project.

48.     Although denied by APTIM, if BECC's testing was negligent as Cabrera alleges, then BECC breached its duty to exercise ordinary professional skill and diligence by failing to properly test the RCC Cap.

49.     APTIM denies that any additional sums are due to Cabrera; however, should APTIM be found liable to Cabrera, BECC is obligated to indemnify APTIM for any damages assessed as a result of BECC's breach of its duty to exercise ordinary professional skill and diligence in performance of its testing services on the Project.

**WHEREFORE**, APTIM respectfully prays that, after due proceedings are had, this Court enter judgment as follows:

A. Dismissing Cabrera's Complaint against APTIM with prejudice, and awarding APTIM its costs and attorney's fees.

B. Awarding damages in favor of APTIM and against Cabrera for all damages described above, together with pre- and post-judgment interest at the maximum interest rate allowed by law, and for its costs and attorney's fees as provided by the Subcontract and/or applicable law; and,

C. Awarding damages in favor of APTIM and against BECC in the amount of any judgment entered against APTIM on Cabrera's claims against APTIM, and for its costs and attorney's fees as provided by the BECC Subcontract and/or applicable law;

D. Granting APTIM such other and further relief as the Court deems just and proper.

Dated: March 4, 2021                             Respectfully submitted,

                                                  **BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

By:   */s/Samuel D. Gregory*
        Samuel D. Gregory
        One Eastover Center
        100 Vision Drive
        Suite 400
        Jackson, Mississippi 39211
        Telephone: (601) 351-2400
        Facsimile: (601) 351-2424
        sdgregory@bakerdonelson.com

AND

        M. David Kurtz (admitted PHV)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
dkurtz@bakerdonelson.com

AND

Mark W. Mercante (admitted PHV)
Jolene Neuman (admitted PHV)
3 Sanctuary Blvd., Suite 201
Mandeville, Louisiana 70471
Telephone: (985) 819-8400
Facsimile: (985) 819-8484
mmercante@bakerdonelson.com
jneuman@bakerdonelson.com

**ATTORNEYS FOR APTIM FEDERAL SERVICES, LLC**

**WAIVER OF FORMAL SERVICE REQUESTED FROM:**

BECC, Inc.
c/o John C. DeShazo, Esq.
Webster, Henry, Bradwell, Cohan, Speagle & DeShazo, P.C.
Two Perimeter Park South, Suite 445 East
Birmingham, Alabama 35243

and its registered agents:

| | |
|---|---|
| Lisa K. Morrison | Mary Morrison |
| 2501 14th Street, Suite 214 | 1404 Buckhead Road |
| Gulfport, Mississippi 39501 | Birmingham, Alabama 35216 |

## CERTIFICATE OF SERVICE

    I hereby certify that on March 4, 2021, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel via the Court's electronic filing system.

        */s/ Samuel D. Gregory*
        Samuel D. Gregory